# In the United States Court of Federal Claims

No. 24-1787
Filed: March 31, 2025
Published: April 2, 2025[†]

| |
|---|
| **DANIELS BUILDING COMPANY, INC.,** |
| *Plaintiff*, |
| v. |
| **THE UNITED STATES,** |
| *Defendant*, |
| and |
| **VETERANS ELECTRICAL GROUP, LLC,** |
| *Intervenor-Defendant*. |

*Marcus R. Sanborn*, Blevins Sanborn Jezdimir Zack PLC, Detroit, MI, for Plaintiff.

*Daniel A Hoffman*, Trial Attorney, with *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Albert S. Iarossi*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with *Melody A Goldberg*, Of Counsel, Attorney, U.S. Department of Veterans Affairs, and *Michael Blumenthal*, Trial Attorney, Office of General Counsel, for the Defendant.

*Timothy L. McGarry*, Henderson, Schmidlin & McGarry Co., LPA, Highland Heights, OH, for Intervenor-Defendant.

### MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

This post-award bid protest considers whether the U.S. Small Business Administration's ("SBA") Office of Hearings and Appeals ("OHA") erred when it determined that Veterans

---

[†] This Opinion was originally under seal on March 31, 2025, (ECF No. 33). The Court provided parties the opportunity to submit proposed redactions. In a Joint Status Report filed April 1, (ECF No. 35), the parties indicated that no redactions were required.

Electrical Group, LLC ("VEG") qualified as an eligible small business for contract award. Daniels Building Company, Inc. ("Daniels") alleges that OHA's decision was arbitrary and capricious and violated the ostensible contractor rule. For the reasons set forth below, the Court **DENIES** Daniels's Motion for Judgment on the Administrative Record, (Pl.'s MJAR, ECF No. 15), and **GRANTS** the United States' and VEG's Cross-Motions for Judgment on the Administrative Record, (Def.'s xMJAR, ECF No. 23; Int-Def.'s xMJAR, ECF No. 22).

## I.     Background

This case involves a contract to complete the Electronic Health Record Modernization ("EHRM") Infrastructure Upgrades construction project at the John D. Dingell Department of Veterans Affairs ("VA") Medical Center in Detroit, Michigan (the "Project").[1] (Administrative Record ("AR") 415). The Contracting Officer ("CO") designated the acquisition as a Service-Disabled Veteran-Owned Small Business ("SDVOSB") Set-Aside and designated North American Industry Classification System ("NAICS") code 236220, Commercial and Institutional Building Construction. (AR 415, 433). The Project had an estimated value of $45 million. (AR 433). The Solicitation included general construction, alterations, removal of existing structures, and construction. (AR 420, 503–05, 521). The Agency would award the contract to the lowest priced responsible bidder. (AR 425).

To perform the Project, VEG executed a teaming agreement with Roncelli, Inc. ("Roncelli"), a general contractor based out of Michigan. (AR 3, 2523, 2572–83). Under the teaming agreement, both VEG and Roncelli agreed to split profits from the Project allocating 51% to VEG and 49% to Roncelli. (AR 2573). Section 5 of the teaming agreement, titled "Responsibilities and Source of Labor[,]" stated:

> Responsibilities and source of labor shall be performed by Roncelli and VEG as set forth in Exhibit B attached hereto. If, during the term of this Agreement, a prime contract is awarded to VEG as a result of the Proposal, VEG will, within five (5) business days from the date of award by the Government to VEG, enter into a subcontract with Roncelli.

(AR 2573). Exhibit B to the teaming agreement provided additional language, stating:

> VEG will provide a bid bond, and upon award, payment and performance bonds, for the project in the name of VEG. Roncelli agrees to provide its indemnification to support the issuance of bonds. Roncelli to obtain a copy of the proposed bonds for review prior to providing any indemnity to the surety. The cost of bonds shall be split as follows: 51% - VEG[,] 49% - Roncelli[.]
>
> VEG shall engage Roncelli as a subcontractor. The subcontract of Roncelli will include scope of work that is not related to electrical and low-voltage scope, but for Roncelli to provide management services with Roncelli's use

---

[1] Solicitation No. 36C77623B0042.

> of its procore project management system. Double signatures will be required on all payments and expenses in connection with all of the work under the Solicitation. Roncelli will receive payment from VEG upon VEG's receipt of payment from the Owner. Each party will defend and indemnify the other party to the extent of their respect fault or wrongdoing. Each party will carry their own commercial general liability insurance and name the other as additional insured.
>
> VEG shall provide a quote which includes all costs, labor burden (i.e., direct personnel costs) and overhead costs for all of the electrical and low voltage scope and for at least 15% of the scope of work of the project that it is to perform. VEG shall hire a project manager and other personnel to perform its scope of work.

(AR 2582). VEG submitted the lowest bid. (AR 87–88). The VA determined that VEG was the lowest priced responsible bidder and awarded the contract accordingly.

Daniels subsequently filed a size protest with the SBA Area Office ("AO"). (AR 1–7). Daniels challenged VEG's size and alleged that VEG lacked the experience, capabilities, and finances to bid or perform the contract. (*Id.*). Daniels specifically alleged that VEG's relationship with Roncelli violated the "ostensible subcontractor rule"[2] because VEG would (1) not perform the primary and vital requirements of the Project, and (2) be unusually reliant on a large subcontractor. (*Id.*). In response, VEG argued that it would provide project management for the electrical and low-voltage aspects of the Project constituting over 60% of the project. (AR 2523–24, 2532). Additionally, VEG asserted that Roncelli would "be primarily involved in the management, supervision and oversight of scopes of work outside of electrical and low-voltage scopes of work." (AR 2523).

The SBA AO found VEG's role to be more consistent with that of a subcontractor "responsible for [only] a portion of the work" and Roncelli's role to be more akin to a prime contractor, having overall responsibility for the management. (AR 2927). The SBA AO concluded that VEG was not performing the primary and vital requirements of the contract, holding:

> [T]he solicitation is a general construction contract, not an electrical contract. Accordingly, the primary and vital requirements are the management, supervision and oversight of the project as a whole, not just the management of the electrical component. As the Teaming Agreement indicates that

---

[2] As explained in more detail below, the "ostensible subcontractor rule" considers whether separate entities are so intertwined that one has the power to control the other. *See generally* 13 C.F.R. § 121.103(h)(3)(ii) and (iii). There are two scenarios in which the "ostensible subcontractor rule" is violated: first, when a subcontractor performs the primary and vital requirements of a contract; and second when the prime contractor is unusually reliant on the subcontractor. *Id.* § 121.103(h)(3)(ii) and (iii).

> Roncelli is the firm that will be coordinating the work of various subcontractors the [AO] finds that Veterans Electrical will not be performing the primary and vital requirements of the contract.

(*Id.*). The SBA AO then found that VEG was not a small business but did not address whether VEG was also unusually reliant on Roncelli. (AR 2930).

VEG appealed that decision to OHA. OHA reversed the AO's size determination, (AR 3078–92), finding that VEG's teaming agreement gave VEG's CEO, "as Project Manager, overall management control over contract performance." (AR 3090). Specifically, OHA found that whatever management of subcontractors Roncelli performed was subject to the Project Manager's control. (*Id.*). Further, OHA determined that VEG's Project Manager would "oversee the jobsite, keep a written log, report to the VA and implement its instructions and is responsible for contract performance." (AR 3091). Additionally, though the AO did not address Daniels's argument of unusual reliance on a subcontractor, OHA determined there was insufficient evidence to support such a finding. (*See* AR 3091–92). Accordingly, OHA reversed the AO's size determination and declared VEG an eligible small business. (AR 3092). Daniels now protests. (*See generally* Compl., ECF No. 1). The VA has voluntarily stayed performance of the project pending this Court's decision. (*See id.* at 1 n.1; Def.'s xMJAR at 9).

## II.   Analysis

Bid protests are decided on the administrative record. A party may move for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). Under RCFC 52.1, the court "make[s] factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The Court "will not put words in an agency's mouth or invent supporting rationales the agency has not itself articulated[,]" and is suspect of "any rationale that departs from the rationale provided at the time the procuring agency made its decision." *Raytheon Co. v. United States*, 121 Fed. Cl. 135, 158 (2015), aff'd 809 F.3d 590 (Fed. Cir. 2015) (internal citations omitted); *see also IAP Worldwide Servs. v. United States*, 159 Fed. Cl. 265, 286 (2022).

"[C]hallenges to decisions by [] OHA fall within the scope of jurisdiction granted under the Tucker Act because such challenges are actions 'in connection with a proposed procurement.'" *Swift & Staley, Inc. v. United States*, 155 Fed. Cl. 630, 635 (2021) (citing *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015)). Like other bid protests, the Court evaluates challenges to OHA's size determinations under the Administrative Procedure Act ("APA") standard of review, 5 U.S.C. § 706. *Paradigm Eng'rs & Constructors, PLLC v. United States*, 147 Fed. Cl. 487, 494 (2020). To be successful, the protestor must show that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A); *see* 28 U.S.C. § 1491(b)(4). Stated differently, the Court must determine whether: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Furthermore, OHA determinations are afforded special deference "because of the SBA's 'quasi-technical administrative expertise and [its] familiarity with the situation acquired by long

4

experience with the intricacies inherent in a comprehensive regulatory scheme.'" *Ceres Envtl. Serv., Inc. v. United States,* 52 Fed. Cl. 23, 33 (quoting *Baird Corp. v. United States,* 1 Cl. Ct. 662, 666 (1983)).

Daniels challenges OHA's determination that VEG qualified as an eligible small business. (*See generally* Pl.'s MJAR). First, Daniels asserts that OHA's determination that VEG was not affiliated with Roncelli by virtue of the ostensible contractor rule was arbitrary, capricious, contrary to law, and an abuse of discretion. (*Id.* at 11–24). Specifically, Daniels argues that OHA: (1) misconstrued the primary and vital requirements; (2) relied on irrelevant facts; (3) failed to address central issues; (4) erroneously placed greater weight on post-bid statements; (5) failed to apply the proper standard of review; and (6) improperly favored documents submitted after the bid. (*Id.*). Daniels also argues that OHA improperly determined that VEG was not unusually reliant on Roncelli. (*Id.* at 24–37). Specific to this claim, Daniels alleges that OHA: (1) failed to follow the standard of review; (2) erred when it found no evidence that VEG relied on Roncelli; and (3) improperly limited its analysis. (*Id.*). Based on these allegations, Daniels asserts that it is entitled to injunctive relief. The Court disagrees.

        A.        The Ostensible Contractor Determination

When determining whether a business concern may be classified as a small business, the SBA considers whether the business is affiliated with another entity and determines its size. *Darton Innovative Tech., Inc. v. United States*, 153 Fed. Cl. 440, 445 (2021). Affiliation between the business concern and another entity exists "when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists." *Id.* § 121.103(a)(1). The SBA determines affiliation by considering "the totality of the circumstances, and may find affiliation even though no single factor is sufficient to constitute affiliation." *Id.* § 121.103(a)(5). SBA's regulations provide that a business is treated as a joint venture, and therefore affiliates, where a subcontractor performs the primary and vital requirements of a contract, or where the prime contractor is unusually reliant on the subcontractor. *Id.* § 121.103(h)(3)(ii) and (iii). This is more commonly referred to as the "ostensible subcontractor" rule. *See id.*

OHA operates as an appellate entity and may reverse the AO's determination based on a "clear error of fact or law." 13 C.F.R. § 134.314. "[A] finding is clearly erroneous when[,] although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993); *see also Ideogenics LLC v. United States*, 138 Fed. Cl. 672, 692–93 (2018). OHA examines the record to ascertain whether the AO's findings are "plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Additionally, "SBA regulations require that, in conducting an 'ostensible subcontractor' analysis, the content of any proposed agreements between prime and subcontractors must be considered." *Ideogenics*, 138 Fed. Cl. at 701 (citing 13 C.F.R. § 121.103(h)(iv)).

        1.        <u>Primary and Vital Determination</u>

Daniels argues that OHA "improperly relied on the fact that [VEG] would be performing a significant portion of the actual construction work" to determine that VEG would be performing the primary and vital requirements of the contract. (Pl.'s MJAR at 13). For general construction contracts, "the primary and vital requirements of the contract are the management, supervision and oversight of the project, including coordinating the work of various subcontractors, not the actual construction work performed." 13 C.F.R. § 121.103(h)(3)(iv).

Daniels supports its claim with a section of OHA's decision, stating:

> [VEG] itself will be performing the majority of the work. Where a concern has the ability to perform the contract, will perform the majority of the work, and will manage the contract, the concern is performing the primary and vital tasks of the contract and there is no violation of the ostensible subcontractor rule.

(AR 3091). However, Daniels omits several preceding sentences where OHA found:

> [T]he Teaming Agreement thus gives [VEG]'s CEO, as Project Manager, overall management control over contract performance. Whatever management of the subcontractors Roncelli will be performing with its Procure software, the Teaming Agreement gives the Project Manager control over the performance of the contract as a whole and over Roncelli as a subcontractor, and it is [VEG's] CEO as Project Manager who will have overall supervision.

(AR 3090–91). In context, OHA determined that VEG would be responsible for the overall management of the contract's performance, including managing Roncelli as a subcontractor. Further still, OHA identified that the only document establishing the roles of both VEG and Roncelli was the teaming agreement, stating that VEG's CEO would be responsible for "*contract performance*, *overseeing* the jobsite, *reporting* to and *implementing* the VA's instructions, preparing a daily written log detailing all developments and aspects of the job, and submitting such a log to the VA upon request." (*Id.* (emphasis added)). OHA found that these skills met the primary and vital requirements for a general construction contract under 13 C.F.R. § 121.103(h)(3)(iv). (*Id.*). There is no reason for the Court to infer a different meaning to the terms of the teaming agreement.

Daniels also alleges that OHA's decision was improper because it "considered irrelevant facts in its analysis of the primary and vital requirements of the Project." (Pl.'s MJAR at 15). Daniels's argument stems from portions of OHA's decision highlighting that VEG would provide a quote for electrical work, a bid bond while bearing 51% of the costs, and would engage Roncelli as a subcontractor for the non-electrical work. (Pl.'s MJAR at 16 (citing AR 3090)). Daniels argues that these facts fail to support VEG's ability to "manage, supervise, oversee and coordinate the construction work," and that OHA failed "to explain their import." (*Id.*). Even if these facts are irrelevant, Daniels has not identified any case law suggesting that a decision by OHA may be overturned simply because OHA considered additional, even unrelated, facts. As previously stated, OHA provided an analysis of the primary and vital requirements in accordance

with the statute. (AR 3090–91). Therefore, the Court finds OHA's decision to be proper, and the supposed "irrelevant facts" fail to detract from OHA's ultimate determination.

Next, Daniels argues that OHA failed to address the central issues regarding the primary and vital requirements in its decision. (Pl.'s MJAR at 17). Daniels asserts that OHA focused on the project's oversight requirements but ignored the "management, supervision, and coordination" requirements. (*Id.* at 18). Daniels goes on to suggest that the teaming agreement "prevent[s] or restrict[s]" VEG's ability to manage and supervise its subcontractor's work. (*Id.* at 17–18). The Court disagrees. OHA's determination clearly stated that "whatever management of the subcontractors Roncelli will be performing with its Procore software" the teaming agreement's terms gave VEG's CEO "overall management control over contract performance" and "over Roncelli as a subcontractor[.]" (AR 3090–91). While Daniels may disagree with OHA's analysis, the record does not demonstrate OHA failed to consider these issues. *See Femme Comp. Inc. v. United States,* 83 Fed. Cl. 704, 740 (2008) ("A protester's mere disagreement with an evaluation does not provide an adequate basis to overturn the agency's decision.").

Daniels then argues that OHA failed to apply the proper standard of review when it neglected to specify errors of law or fact by the AO. (Pl.'s MJAR at 22). Daniels complains that OHA's findings were superficial when concluding that the AO had "erred in its determination that [VEG] would not be performing the primary and vital requirements of the contract and was in violation of the ostensible subcontractor rule, when record demonstrates otherwise[,]" (*Id.* at 23). Daniels's argument is unconvincing.

Within its decision, the AO affirmed that all aspects of the relationship between the prime and subcontractor would be considered when determining affiliation, including any teaming agreements. (AR 2925). The AO subsequently focused much of its attention on a supplement to the teaming agreement which provided that: (1) VEG would engage Roncelli as a subcontractor; (2) Roncelli's subcontract would include a scope of work not related to electrical and low-voltage scope; and (3) Roncelli would provide management services through the use of its Procore project management system. (AR 2926). The AO expressed concern that the supplement did not state that Roncelli would permit "VEG to manage the project using Roncelli's software licenses, but rather Roncelli [would] perform the management services using its software." (*Id.*).

The AO also highlighted language within VEG's protest response indicating that Roncelli would be primarily involved in the management, supervision, and oversight of work outside of the electrical and low-voltage scopes of work. (AR 2927). The AO also noted that VEG's response indicated that since 60% of the Project was for electrical and low-voltage work, VEG would provide "over 60% of the project management, supervision, and oversight." (*Id.*). Nonetheless, the AO found the described level of work to be more consistent with the actions of a subcontractor responsible for a portion of the work versus a prime contractor with "overall responsibility." (*Id.*). Based on these facts, the AO concluded that Roncelli's role seemed more consistent with that of a prime contractor under the teaming agreement; specifically, that Roncelli would be "coordinating the work of various subcontractors." (*Id.*).

7

Notably, the AO's analysis fails to acknowledge or address the section of the teaming agreement that establishes the role of the Project Manager. (*See generally* AR 2921–30). The teaming agreement provided:

> London Burnett has been selected as the Project Manager for the Contract and is an employee of VEG. The Project Manager shall be responsible for contract performance, overseeing the jobsite, reporting to and implementing the instructions of the Contracting Authority, preparing a daily written log detailing all developments and aspects of the job, and submitting such log to the Contracting Authority upon request.

(AR 2573). OHA specifically found this provision vested VEG's Project Manager with overall control of management, performance, and Roncelli, which notably addressed the AO's previously discussed concerns. (AR 3090–91). OHA identified a specific error in the AO's factual analysis—a failure to analyze or even acknowledge the Project Manager provision within the teaming agreement. (*Id.*). OHA's disagreement with the AO was rational and therefore, Daniels's claims fail.

Finally, Daniels makes several arguments that OHA erred when it afforded greater weight to VEG's "post-bid statements" and "to the division of labor that was submitted after the proposal and in direct response to Daniel's size protest." (Pl.'s MAJR at 21, 24). However, other than identifying that VEG submitted post-bid statements and information regarding the division of labor, Daniels has offered no evidence demonstrating OHA afforded a greater weight to either form of evidence. (*See id.* at 20–24). As to primary and vital determinations, Daniels fails to support its claim.

### 2. Unusually Reliant Determination

For unusual reliance, SBA case law provides a four-factor test to demonstrate unusual reliance on a subcontractor: (1) "the proposed subcontractor is the incumbent contractor and is ineligible to compete for the procurement;" (2) "the prime contractor plans to hire the large majority of its workforce from the subcontractor;" (3) "the prime contractor's proposed management previously served with the subcontractor on the incumbent contract;" and (4) "the prime contractor lacks relevant experience and must rely upon its more experienced subcontractor to win the contract." *Size Appeal of Logistics Co. Inc.*, SBA No. SIZ-5975 at 9 (2018). "In determining whether affiliation exists, SBA will consider the totality of the circumstances, and may find affiliation even though no single factor is sufficient to constitute affiliation." 13 C.F.R. § 121.103(a)(5). OHA's consideration of these four factors, combined with other indicia of unusual reliance, "is consistent with 13 C.F.R. §§ 121.103(a)(5) and (h)(4)" which requires consideration of all aspects of the relationship. *Ideogenics*, 138 Fed. Cl. at 692.

Daniels argues that OHA's review of unusual reliance was improper because "there was no [AO] determination on unusual reliance, [thus] there can be no clear error." (Pl.'s MJAR at 24). Daniels asserts that OHA was required to remand the issue back to the AO so that it may decide the issue of unusual reliance. (*Id.* at 24–26).

13 C.F.R. § 134.316(c) provides that "[t]he [OHA] Judge will not decide substantive issues raised for the first time on appeal, or which have been abandoned or become moot." Before the AO, Daniels initially raised arguments of unusual reliance when filing its size protest. (AR 1–7). The AO's decision did not analyze the issue of unusual reliance because it determined that Roncelli would be performing the primary and vital requirements of the contract in violation of the ostensible subcontractor rule. (AR 2927). VEG appealed this determination to OHA and re-asserted arguments against Daniels's claims of unusual reliance. (AR 2958). In response to VEG's appeal, Daniels's OHA brief included several pages of arguments pertaining to the issue of unusual reliance. (AR 3051–54). Based on the record, the issue of unusual reliance was first raised in Daniels's initial appeal to the AO, not before OHA. (*See* AR 1–7). Upon appeal of the AO's decision, both parties continued to present arguments under the unusual reliance prong, thus it was clear that the issue was neither moot nor abandoned. (AR 2958, 3051–54). Therefore, OHA could properly decide this issue. *See Swift & Staley, Inc. v. United States*, 159 Fed. Cl. 494, 501 (2022) (finding it contradictory for a party to raise affiliation arguments before the AO, receive and subsequently rely on the AO's "favorable determination" when arguing before OHA, only to later claim "that the issue was not previously raised" when OHA considered it.), *aff'd*, No. 2022-1601, 2022 WL 17576348 (Fed. Cir. 2022).

Next, Daniels claims that OHA erred when it found "no evidence" that VEG relied on Roncelli to win the contract. (Pl.'s MJAR at 26). As stated earlier, there are four primary factors considered when determining unusual reliance; however, Daniels only raises arguments under the fourth factor, focusing on whether "the prime contractor lacks relevant experience and must rely upon its more experienced subcontractor to win the contract." (*Id.* (citing *Size Appeal of Dover Staffing, Inc.*, SBA No. SIZ-5300, 2011 WL 7101064 (2011)). Specifically, Daniels believes that OHA's "no evidence" holding was a clear error of law because VEG relied on Roncelli's experience and connections to obtain quotes from subcontractors, needed Roncelli to back bid bonds, and lacked the finances and experience to demonstrate that it could handle the Project. (*Id.* at 26–32). The Court will turn to each aspect of Daniels' argument.

First, Daniels argues that "Roncelli's use of its experience and connections to obtain quotes is an example of [VEG's] unusual reliance on Roncelli to win the bid[,]" and reliance on a subcontractor for proposal preparation is "indicia of unusual reliance." (Pl.'s MJAR at 28 (citing *Size Appeal of Logistics & Technology Services, Inc.*, SBA No. SIZ-5482, 2013 WL 3967519, at 8 (July 2, 2013)). The Court first notes that "indicia" means that there are "[c]ircumstances which point to the existence of a given fact as probable, but not certain." *Indicia*, BLACK'S LAW DICTIONARY (12th ed. 2024). To be clear, a prime contractor's assistance of a subcontractor to obtain bids does not demonstrate unusual reliance in and of itself but may be an indicator. OHA considered and addressed this issue within its decision, specifically stating:

> That Roncelli was soliciting potential subcontractors while purporting to be the prime contractor is irrelevant here. Roncelli is not in fact the prime contractor, and there is no authority for this action by Roncelli to support an ostensible subcontractor finding. Preproposal negotiations between concerns are also not relevant. The size determination must be based upon the proposal and documents prepared for such Solicitation. Accordingly, I conclude that Daniels has failed to establish the Appellant is unusually reliant upon Roncelli.

9

(AR 3091). Daniels's disagreement with OHA's assessment is not sufficient to disturb OHA's determination.

Next, Daniels alleges that OHA failed to address its argument that "VEG could not obtain a bond for the Project without Roncelli backing the bond[.]" (Pl.'s MJAR at 29). Daniels asserts that OHA's analysis fails to acknowledge or reference how Roncelli's backing of the bond was evidence that VEG lacked relevant experience and had to rely on Roncelli's experience to secure the contract. (*Id.* at 29). Due to this alleged failure, Daniels claims that OHA erred as a matter of law by "concluding that bonding is insufficient to find unusual reliance" and, as a matter of fact, when it failed to consider or make a finding as to whether Roncelli's backing of the bond "made [VEG] unusually reliant on Roncelli[.]" (*Id.* at 30).

First, the Court disagrees with Daniels's premise that OHA failed to address the backing of the bid. OHA acknowledged Daniels's argument, (AR 3088), but determined that even though "[VEG] will receive assistance from Roncelli to obtain bonding, this alone is not sufficient to establish unusual reliance without other supporting factors." (AR 3091). Daniels's assertion that OHA failed to consider these concerns is unsupported.

Further still, Daniels's characterization of OHA's determination is misleading. As the Court has already established, OHA's review considers all aspects of the relationship between VEG and Roncelli. *See Ideogenics*, 138 Fed. Cl. at 692. In this case, Roncelli's backing of the bond was one of several factors evaluated by OHA, which stated:

> Here, Roncelli is not the incumbent contractor, [VEG] does not plan to hire its workforce from Roncelli, [VEG's] management will not come from Roncelli, and there is no evidence that [VEG] relied on Roncelli's experience to win the contract, its bid is a lump sum, and Roncelli is not mentioned in its bid. While [VEG] will receive assistance from Roncelli to obtain bonding, this alone is not sufficient to establish unusual reliance without other supporting factors.

(AR 3091). Daniels's attempt to highlight the final factor considered by OHA to demonstrate an error of law ignores that OHA is required to assess all information that was properly before the AO in making its decision. *Ideogenics*, 138 Fed. Cl. at 701 ("OHA will examine the record as a whole[.]"). Daniels has not demonstrated that OHA's findings are irrational or not in accordance with law, thus the Court will not disturb OHA's determination. *See Eagle Design and Mgmt., Inc. v. United States*, 57 Fed. Cl. 271, 273 (2002).

Daniels next argues that "[VEG's] finances and experience do not demonstrate that it could obtain or handle the project without significant assistance" from Roncelli. (Pl.'s MJAR at 30). To support its argument Daniels highlights that VEG's previous contracts were conducted by a "different company" and cites *Dover Staffing* in which OHA determined the Appellant had "relied almost entirely" on a subcontractor for the "directly relevant experience" for the contract. (*Id.* (quoting *Dover Staffing*, SBA No. SIZ-5300 at *9)).

Here, VEG supplied information regarding three of its previous contracts. (AR 2521–22). Notably, one of those contracts involved work identical to this present procurement. (*Id.*).

10

Moreover, Daniels has not supplied any evidence to suggest that VEG relied on the past experience of Roncelli, or any other business, to obtain this award. (*See* Pl.'s MJAR at 30–32). While VEG has acknowledged that its prior contracts were conducted under a joint venture, (AR 9–10), it has pursued this present contract individually. This is distinct from *Dover Staffing*. VEG utilized its own experience, has relevant experience, and is not pursuing this solicitation under the previously formed joint venture. The indications of unusual reliance found in *Dover Staffing* are not present in this case. OHA acknowledged Daniels's arguments relating to VEG's past experience but did not reach the conclusion Daniels urged. (AR 3091–92; 3091 n.4 (finding Daniels's allegations regarding VEG's past experience to be speculative and declining to consider them)). This disagreement does not equate to error.

Daniels's remaining arguments regarding VEG's finances are sparse and not supported by the record. Daniels simply asserts that the "post-bid documents provided by [VEG] do not support that it is prepared to act as the general contract[or] on a $27 million project." (Pl.'s MJAR at 31). The Court reiterates that it will not overturn OHA's decisions based on simple disagreement.

### 3. OHA's Limited Analysis

Daniels argues that OHA's decision was not in accordance with law because OHA: (1) limited its analysis to the four factors in *Dover Staffing*; (2) incorrectly stated that preproposal negotiations between concerns are not relevant; and (3) declared size determinations must be based on the proposal document prepared for the Solicitation. (Pl.'s MJAR at 32–33). However, Daniels does not demonstrate that OHA relied solely on *Dover Staffing* factors, and the Court finds that no further assessment is required.

Considering that the teaming agreement was the primary basis for OHA's reversal of the AO's decision, the Court does not find Daniels's claims of limited analysis convincing. The teaming agreement was the result of preproposal negotiations and VEG's responses to Daniels's protests added information not found within the original proposal documents. (*See generally* AR 2520–83). Daniels has not shown OHA improperly limited its analysis.

Daniels goes on to allege that OHA failed to consider several other unusual reliance factors.[3] Daniels raised all of these issues in its briefing to OHA, (AR 3051–54), and OHA's decision addressed them. (AR 3080). OHA also determined Daniels's allegations that VEG's personnel were "fast and loose" to be speculative. (AR 3091 n.4). Thus, while OHA did not devote detailed explanations to these allegations, they were addressed.

---

[3] These factors include: (1) the teaming agreement requiring signatures from both VEG and Roncelli; (2) that Roncelli would provide management services through its Procore management system; (3) distribution of 51% of profits to VEG and 49% to Roncelli; (4) that Roncelli must review and approve the proposal prior to submission; (5) VEG's previous personnel's history of playing "fast and loose" with the rules; and (6) VEG's violation of 48 C.F.R. § 52.203-13. (AR 33–37).

Daniels claims that VEG violated 48 C.F.R. § 52.203-13 which establishes contractor codes of business ethics and conduct. (Pl.'s MJAR at 36). Daniels argues that certain provisions of this regulation require contractors to make reasonable efforts to disclose the criminal history of individuals within their organization to the procuring agency. (*Id.* (citing 48 C.F.R. § 52.203-13(b)(3)(i)(A))). This regulation ensures contractors are transparent regarding the criminal history of their personnel. *See* 48 C.F.R. § 52.203-13(b)(3)(i)(A). However, Daniels presents no case law establishing how criminal history within an organization is relevant to the Court's review of OHA's size determination. Daniels's attempt to highlight the criminal history of VEG's vice president, while intriguing, does not affect the Court's determination.

### B. Injunctive Relief

Daniels asserts that it is entitled to injunctive relief. (Pl.'s MJAR at 37–39). Injunctions may be granted when a party demonstrates (1) success on the merits, (2) irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the injunction serves the public interest. *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004)). No one factor is dispositive, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *Chapman Law Firm v. United States*, 67 Fed. Cl. 188, 190 (2005) (quoting *FMC Corp. v. United States*, 3 F.3d at 427). Here, Daniels has not established success on the merits. Accordingly, injunctive relief is denied.

### III. Conclusion

For the reasons stated above, Daniels's Motion for Judgment on the Administrative Record, (Pl.'s MJAR, ECF No. 15), is **DENIED**. The United States' and VEG's Cross-Motions for Judgment on the Administrative Record, (Def.'s xMJAR, ECF No. 23; Int-Def.'s xMJAR, ECF No. 22), are **GRANTED**.

The Clerk is **DIRECTED** to enter judgment accordingly. The parties shall meet and confer and file a Joint Status Report proposing redactions to this memorandum opinion within fourteen (14) days of its entry to allow the Court to file a public version of the opinion.

**IT IS SO ORDERED.**



s/     David A. Tapp
DAVID A. TAPP, Judge